**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Emil Soehnlen, | ) | CASE NO. 1:15 CV 1181 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Fleet Owners Insurance Fund, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. 23). This case arises under the Employee Retirement Security Act of 1974 ("ERISA"). For the reasons that follow, plaintiff's motion is GRANTED.

**FACTS**

**1. Background**

Plaintiff is an employee of Superior Dairy, Inc. As an employee of Superior Dairy, plaintiff is a participant and beneficiary of defendant Fleet Owners Insurance Fund, which is an "employee benefit welfare plan" within the meaning of ERISA. Medical Mutual of Ohio is defendant's third-party claims administrator for first-tier reviews of claims. The terms of the plan

are set forth in a Participation Agreement, an Amended and Restated Agreement and Declaration of Trust, and a Plan Document/Summary Plan Description ("SPD").

The SPD sets forth the procedure for making a claim for benefits as well as appealing the denial of a claim. If a participant's claim for benefits is denied, the participant can appeal to a claims committee. A majority of the claims committee will vote to approve or deny the claim. The notice containing the committee's decision is to contain "(a) the specific reasons for the action; (b) pertinent Plan provisions on which the action is based; and (c) an explanation of the Fund's claim procedures." If the committee denies the claim, then the participant may appeal the denial to defendant's Trustees. The Trustees' decision is to be in writing and must contain "(a) the specific reason or reasons for the action; and (b) pertinent Plan provisions on which the action is based." (2014 SPD at 9-11).

On June 1, 2014, plaintiff suffered a debilitating stroke. As a result of the stroke, plaintiff incurred significant medical expenses for such things as life-flights to hospitals, emergency surgeries, and extensive speech and physical rehabilitative treatment. Much of plaintiff's rehabilitative treatment was with Mentis Ohio, LLC, a neuro rehabilitation facility accredited by the Commission on Accreditation of Rehabilitation Facilities. Before being transferred to Mentis, plaintiff sought approval from defendant. Specifically, on July 11, 2014, plaintiff's attorney wrote to defendant, stating, "[I]t makes sense to move Emil from a general medical hospital to a specialized rehab facility. Please let us know if the Trustees need more information or if there will be any coverage issues regarding Emil's stay at Mentis."

Initially, defendant's attorney responded immediately that "[t]he Trustees will be in favor of the move [to Mentis], no problem with that." On July 22, 2014, however, he wrote to

plaintiff's attorney that "Mentis is what is called a 'residential facility.' The industry standard (according to MMOH) is that care in residential facilities is not normally covered. We (Fleet) do not have any information regarding this facility, rates, care, etc.... I think the best approach is to ask Superior to put a package and proposal together so I can present something to the Trustees."

Two days later, plaintiff's attorney sent defendant's attorney information about the Mentis facility as well as Mentis's individual treatment plan for plaintiff. Thereafter, on July 28, August 4, and August 12, 2014, plaintiff's attorney sent emails to defendant's attorney to check on the status of the Trustees' review of plaintiff's treatment at Mentis and to see if the Trustees required any other information about the facility. (*See, e.g.,* Doc. 1-7, at 215) ("Lance: Let me know if last Thursday's correspondence [regarding Mentis and plaintiff's treatment plan] provided the information that the Trustees were requesting. If not, I can get whatever they need to determine coverage issues at the Mentis facility."). The administrative record does not contain a response from defendant indicating that the information plaintiff submitted was deficient.

**2. Plaintiff's claims and appeals**

On a first-tier review of plaintiff's claims for benefits, Medical Mutual denied payment for many of the services that plaintiff received as a result of his stroke. Medical Mutual's stated reason for the denial was: "Based on rules from your certificate or summary plan description, maximum benefits have been provided for this service under this patient's coverage."

Through his attorney, plaintiff appealed the denial of his claims on September 3, 2014. His attorney argued that annual and lifetime maximum limitations were no longer allowed under the Patient Protection and Affordable Care Act ("ACA"). See 45 C.F.R. § 147.126(a)(1)-(2) (prohibiting annual and lifetime maximum limits for essential health benefits). On December 18,

-3-

2014, defendant's attorney notified plaintiff's attorney that the Trustees had met and reviewed plaintiff's claims. The letter states new reasons for denying the Mentis claims:

> Without Mentis, Emil has not reached the $175,000 limit for 2014 claims paid that the Trustees extended to him. The original limit was $125,000 under Plan B that was chosen by Superior Dairy.
>
> Claims other than Mentis are not being denied as far as I understand.
>
> Mentis is out of network and as such is not covered by the ACA. There are in-network facilities that Emil could move to.
>
> The Trustees believe that Mentis has been engaging in fraudulent billing and have asked me to investigate whether the Fund should take action against Mentis. No Mentis claims will be paid until this issue is resolved.

(Doc. 23-7, at 9). There is no evidence in the administrative record that defendant's attorney undertook an investigation of Mentis, and no explanation in the administrative record as to why the Trustees believed that Mentis was engaged in fraudulent billing practices.[1]

On February 11, 2015, plaintiff's attorney filed a second appeal and review request of the Trustee's decision. He argued that defendant could not place annual maximum limits on benefits under the ACA, whether the expenses incurred were for in-network or out-of-network services. Plaintiff did not receive a response to his second appeal, so on June 12, 2015, he instituted this action.

### 3. Defendant's offer of indemnification

In its brief in opposition to plaintiff's motion for summary judgment, defendant states that during the mediation conference before Magistrate Judge Vecchiarelli, its counsel represented to plaintiff's counsel that defendant "was indemnifying Plaintiff from all outstanding

---

[1] Mentis joined the Medical Mutual network in 2015. Since then, "all Mentis claims for Emil Soehnlen have been paid in full." (Kavalec Aff. ¶ 14).

-4-

claims while Defendant's disputes with vendors were pending. Further, Defendant has advised Plaintiff in writing that he is indemnified from all such claims." Indeed, according to defendant, "[a]ll of Plaintiff's benefits claims for services rendered from 2015 through the present are being paid in full. Plaintiff has never paid a single claim for which he is suing....[W]hile the Defendant has not fully paid all vendors for a few claims for services rendered in 2014, Plaintiff has been indemnified for those claims. Plaintiff will not have to pay any claims and his entire case is moot." (Def.'s Opp. Br. at 3) (citing Kavalec Aff.). As support, defendant cites a letter dated January 3, 2016, from one of the Trustees, which states: "Please be advised that Fleet Owners Insurance Fund undertakes to indemnify you from liability for the claims listed on the attachment. During 2016, the fund will attempt to resolve these claims."

In his reply brief, plaintiff filed the affidavit of its counsel stating that in response to the indemnification offer, he asked defendant's counsel if defendant would provide for reimbursement of expenses that plaintiff's father had already paid. According to plaintiff's counsel, defendant's counsel "responded that under no circumstances would the Fleet Owners Insurance Fund reimburse, or remit repayment to ...the father of...[plaintiff] for any invoices that [plaintiff's father] had already paid..., even if those invoices should have been paid by the Fleet Owners Insurance Fund." Defendant also refused to reimburse plaintiff for his costs, attorney fees, and expenses in bringing this lawsuit. Plaintiff did not accept the indemnification offer in settlement of his claims.

### 4. Plaintiff's claims

Plaintiff's Complaint asserts five counts in his Complaint:

In Count I, plaintiff seeks to recover benefits due him, enforce his rights under the terms of defendant's plan, and clarify his future rights to benefits under the plan,

> including those mandated by the ACA (citing ERISA §1132(a)(1)(B));
>
> Count II alleges that defendant "forfeited and surrendered its purported 'grandfathered' status" under the ACA, and therefore seeks to recover benefits due, enforce his rights under the terms of the plan, and clarify his future rights to benefits under the plan, including those mandated by the ACA, for "non-grandfathered group health plans" (citing ERISA §1132 (a)(1)(B));
>
> In Count III, plaintiff seeks to enjoin defendant's violations of the plan, the ACA, ERISA, the Participation Agreement, and the Amended and Restated Agreement and Declaration of Trust and to obtain monetary, declaratory, and equitable relief to redress such violations (citing ERISA §1132(a)(1)(B));
>
> Count IV alleges that defendant has breached the Participation Agreement; and
>
> Count V alleges that defendant breached the Amended and Restated Agreement and Declaration of Trust.

Now pending before the Court is plaintiff's Motion for Summary Judgment. Plaintiff does not articulate in his motion which counts his motion addresses, but he refers to his case as a "29 U.S.C. §1132(a)(1)(B) suit" and focuses his arguments on defendant's violations of ERISA. He does not argue or show how he would be entitled to judgment as a matter of law for defendant's breach of the Participation Agreement or the Amended and Restated Agreement and Declaration of Trust independent of ERISA. Thus, the Court will construe plaintiff's Complaint as seeking relief under 29 U.S.C. §1132(a)(1)(B). Defendant opposes plaintiff's motion.

### ANALYSIS

#### 1. Mootness

The Court must first address defendant's argument that plaintiff's claims are moot as such an argument goes to this Court's subject matter jurisdiction. In its brief in opposition, defendant argues that all of plaintiff's claims are moot because of the indemnification offer that it made plaintiff during the court-ordered mediation process. (See Def.'s Opp. Br. at 3)

("Plaintiff will not have to pay any claims and his entire case is moot.") As an initial matter, the Court agrees with plaintiff that defendant should not have disclosed the indemnification offer because it came about during the court-ordered mediation process. This Court's Local Rules state that "[t]he entire mediation process is confidential and privileged…. The parties….may not disclose information regarding the process including settlement terms to the Court or to third persons unless all parties otherwise agree. The mediation process shall be treated as a compromised negotiation for purposes of the Federal Rules of Evidence."

In any event, plaintiff's reply brief makes clear that this case is not moot. As noted above, plaintiff did not accept the indemnification offer in settlement of his claims. An unaccepted settlement offer or offer of judgment does not moot a plaintiff's case. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Moreover, plaintiff has produced evidence showing that the indemnification offer did not cover all of the claims at issue in the case. (See Pl.'s Reply Br. at 6). Thus, this Court will address plaintiff's motion for summary judgment.

    **2.**     **Standard of Review**

Normally, a district court applies a *de novo* standard of review to a plan administrator's denial of benefits. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). But when a plan administrator is given discretionary authority to determine eligibility for benefits or to construe the plan terms, the court applies "the highly deferential arbitrary and capricious standard of review." Id. (internal quotations omitted).

Plaintiff argues–and defendant does not dispute–that the Court should apply a *de novo* standard of review in evaluating defendant's decision to deny benefits. According to plaintiff,

"[n]either the Fleet Owners Insurance Fund 2014 SPD nor the Plan Document expressly vest in the Plan's claims decision-makers discretionary authority." (Pl.'s Br. at 12). The 2014 SPD, however, identifies the Trustees as a plan fiduciary and states that "[a] fiduciary exercises discretionary authority or control over management of the Plan…or has discretionary authority or responsibility in the administration of the Plan." (2014 SPD at 5, 6). With this grant of discretionary authority to the Trustees, the Court must apply an arbitrary and capricious standard of review to the denial of benefits decision. The arbitrary and capricious standard of review does not apply, though, to questions of law, such as whether defendant's procedure in denying the claim meets the requirements of ERISA § 1133. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005); *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011).[2]

      While the arbitrary and capricious standard is the "least demanding form of judicial review of administrative action, a federal court's job is not to merely "rubber stamp[]" the administrator's decision. *Moon v. UnumProvident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). Instead, it must consider the evidence and determine if the decision was based on a "principled reasoning process" and "substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). In evaluating a plan administrator's decision, the court's review is limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

---

[2]    The Sixth Circuit has suggested, but not decided, that a plan administrator might forfeit the deferential arbitrary and capricious standard when it fails to timely respond to a claim for benefits. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000). The Court need not resolve this issue as plaintiff can show that he is entitled to relief under an arbitrary and capricious standard.

-8-

### 3. Exhaustion of administrative remedies

The Sixth Circuit has held that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Evans v. Laborers' District Council and Contractors' Pension Fund of Ohio*, 602 Fed. Appx. 608, 616 (6th Cir. 2015) (quotations omitted). Here, defendant argues that plaintiff has failed to exhaust his administrative remedies. Although the basis of defendant's argument is not entirely clear, it appears to argue that plaintiff has failed to meet the exhaustion requirement because: (1) the Trustees' December 18, 2014 correspondence with plaintiff's counsel "did not state that it was rejecting Plaintiff's claims" and (2) defendant told plaintiff that it did not have a complete factual record and "plaintiff failed to take any steps to help Defendant develop a more complete factual record." The Court finds that because defendant failed to timely respond to plaintiff's appeal of the December 18, 2014 letter, he is deemed to have exhausted his administrative remedies and thus the Court may hear his claims.

The Trustees' December 18, 2014 letter states that the Trustees were not going to pay for any Mentis claims because Mentis was out of network and because the Trustees thought that the claims were fraudulent. It is evident from plaintiff's response to the letter that he believed the Trustees had denied the Mentis claims. In response to the letter, plaintiff asked for a second appeal and review of the Trustees' denial. If defendant did not intend for the letter to be a denial of the Mentis claims, there is nothing in the administrative record showing that it clarified its stance with plaintiff. Nor does the letter or any communication from defendant to the plaintiff thereafter explain what other steps plaintiff was to take to obtain payment of his claims. In fact, the letter states that defendant's attorney–not plaintiff–was to undertake the investigation into

whether the Mentis claims were fraudulent. (See Doc. 23-7, at 9) (emphasis added) ("The Trustees believe that Mentis has been engaging in fraudulent billing and have asked *me* to investigate whether the Fund should take action against Mentis."). But nothing in the administrative record indicates he undertook such an investigation. Moreover, there is nothing in the administrative record showing that defendant ever responded to plaintiff's appeal of the December 18, 2014 denial.[3]

According to ERISA's implementing regulations, a plan administrator must notify a claimant of its response to a review request within sixty days. 29 C.F.R. § 2560.503-1. If a plan administrator fails to timely respond, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act." *Id.* 29 C.F.R. § 2560.503-1. *See also Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000). Plaintiff submitted his appeal of the December 18, 2014 letter on February 11, 2015. He then filed this lawsuit on June 12, 2015, more than sixty days after defendant failed to respond to his appeal. As such, he is deemed to have exhausted his administrative remedies.

### 4.     Full and fair review

ERISA § 1133 requires a claims administrator to put a claimant on notice of the reasons for its denial and to provide an opportunity to appeal the denial. According to § 1133:

---

[3]     Defendant's argument that plaintiff failed to exhaust his administrative remedies because he did not take any steps to develop the factual record is disingenuous. Plaintiff's counsel submitted the information that defendant had requested about Mentis and thereafter sent three emails to defendant's counsel to see if defendant needed anything else. Defendant did not identify any further information that it needed. Thus, to the extent that the factual record is deficient, it is hardly plaintiff's fault.

> [E]very employee benefit plan shall:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The implementing regulations further require that the notice include a reference to the specific plan provisions on which the denial is based, a description of any additional material or information necessary for the claimant to perfect the claim, an explanation of why this information is necessary, and a description of the plan's review procedures. 29 C.F.R. 2560.503-1.

An administrator's failure to comply with the ERISA notice requirements generally results in a remand to the administrator. *Moore v. Lafayette Life Ins. Co.*, 458 F.2d 416, 436 (6th Cir. 2006). To avoid a remand, an administrator must "substantially comply" with the requirements. *Id.* To decide whether the administrator has met this standard, the court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances. *Id.*

Plaintiff argues that defendant's administrators did not substantially comply with § 1133 in denying his claims because, at the second-tier review, the Trustees articulated different reasons for denying his claims than Medical Mutual articulated at the first-tier review. Specifically, Medical Mutual denied plaintiff's claims because he had exceeded his maximum benefits under the plan. On appeal, however, the Trustees denied plaintiff's Mentis claims because Mentis was out of network and because the Trustees believed that the Mentis charges

-11-

were fraudulent. On review of the administrative record, the Court agrees that the Trustees' December 18, 2014 denial did not substantially comply with the ERISA notice requirements.

First, the Trustees offered two rationales for denying plaintiff's claims but did not identify any specific plan provisions on which either denial was based. Nor did the Trustees provide a description of any additional material or information necessary for plaintiff to perfect the claim, an explanation of why this information was necessary, or a description of the plan's review procedures. Moreover, defendant has not cited to anything in the administrative record that shows why the Trustees believed that the Mentis claims were fraudulent.[4] Defendant argues that its refusal to cover the Mentis claims was based on plaintiff's failure to provide defendant with necessary information about Mentis. But, as noted above, despite repeated requests by plaintiff's attorney, defendant never informed him that the information he had submitted about Mentis was deficient or that it needed additional information.

Second, as plaintiff notes, the Trustees' rationale for denying his claims differed from the rationale offered by Medical Mutual. The Sixth Circuit has held that "an administrator may not initially deny benefits for one reason, and then turn around and deny benefits for an entirely different reason, after an administrative appeal, without affording the claimant an opportunity to respond to the second, determinative reason for the denial of benefits." *Balmert v. Reliance*

---

[4] Defendant states in its opposition brief that it believed the charges were fraudulent because "after Defendant initially denied claims from [Mentis, Mentis] resbumitted claims for services rendered at the same dates and times, and for the same prices as the initially denied claims, but the services were labeled differently from the initially denied claims." (Def.'s Opp. Br. at 9). Defendant cites to the affidavit of Robert Kavalec, one of defendant's Trustees, as support, but Kavalec's affidavit does not contain any statement regarding why the Trustees believed the Mentis claims were fraudulent. Even if it did, the Court could not consider such evidence because it is not a part of the administrative record.

-12-

*Standard Life Ins. Co.*, 601 F.3d 497 (6th Cir. 2010). For example, the court held in *Wenner v. Sun Life Assur. Co. of Canada* that a plan administrator did not substantially comply with § 1133 when his "initial benefits termination letter indicated that his failure to respond to an updated information request was the sole basis for the benefits termination, but the final decision letter stated the entirely new reason that ...Wenner was no longer disabled." 482 F.2d 878, 883 (6th Cir. 2007). Here, the Trustees denied plaintiff's claims because Mentis was out of network and because they believed that the Mentis charges were fraudulent. This was an entirely different reason than the one offered by Medical Mutual–that plaintiff had exceeded his maximum benefits. In addition, defendant effectively denied plaintiff an opportunity to respond to the Trustees' denial when it failed to acknowledge plaintiff's second appeal request, dated February 11, 2015.

The Court therefore holds that the Trustees' December 18, 2014 denial failed to comply with ERISA's notice requirements. Moreover, because there is an absence of reasoning in the record to support the Trustees' decision, the Court finds that the denial was arbitrary and capricious.

**5. Remedy**

Finally, the Court must consider the appropriate remedy: award benefits to plaintiff or remand to the plan administrator. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006). In *Elliott*, the Sixth Circuit explained that "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Id.* at 622.

Here, the Court finds that remand is the appropriate remedy. Given the Trustees' failure

to explain the basis of their denial, including the plan provisions on which the denial was based, as well as the confusion about which claims have been paid and which have not, the Court cannot say with certainty that the plaintiff is clearly entitled to benefits, and if so, the amount to which he is entitled.

This case is remanded to defendant for a full and fair inquiry of plaintiff's claims. In doing so, the Court notes that any reliance by defendant on its grandfathered status under the ACA to deny plaintiff's claims would be misplaced. To maintain status as a grandfathered health plan under the ACA, "a plan or health insurance coverage must include a statement that the plan or coverage believes it is a grandfathered health plan within the meaning of section 1251 of the Patient Protection and Affordable Care Act, and must provide contact information for questions and complaints, in any summary of benefits provided under the plan." 45 C.F.R. § 147.140. Defendant has not cited to any such disclosure in the 2014 SPD, nor has the Court found one on an independent review. Thus, it forfeited its grandfathered status under the ACA.

**6.     Attorney fees**

Plaintiff asks this Court for an award of attorney's fees and costs. Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(ii). Plaintiff, however, raises this issue for the first time in his reply brief. As a result, defendant has not had an opportunity to respond. If defendant wishes to respond to plaintiff's request for fees and costs, it must do so within 10 days of this Order. Plaintiff will thereafter have 7 days to file a reply brief.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 23) is GRANTED. This case is hereby remanded to defendant for a full and fair review of plaintiff's claims.

IT IS SO ORDERED.


       /s/ Patricia A. Gaughan
       PATRICIA A. GAUGHAN
       United States District Judge

Dated: 3/11/16